## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Mark K. Weber, II,                          :
                                            :
        Plaintiff,             :    Case No.: 3:13-cv-00229-WHR
                                            :
    v.                                  :    Judge Walter H. Rice
                                            :
Menard, Inc., et al.,                       :
                                            :
        Defendants.            :

### DEFENDANT MENARD, INC.'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant Menard, Inc. ("Menards") hereby moves this Court for an Order of Summary Judgment on its behalf. No genuine issues of material fact exist, and therefore, Menards is entitled to Summary Judgment as a matter of law. The reasons in support of this Motion are discussed more fully in the attached Memorandum in Support.

Respectfully submitted,

Patrick Kasson, Esq. (0055570)
Reminger Co., L.P.A.
Capitol Square Building, 4th Floor
65 E. State Street
Columbus, Ohio 43215
Phone: (614) 232-2418/Fax: (614) 232-2410
pkasson@reminger.com
*Counsel for Defendant, Menard, Inc.*

## I.    PRELIMINARY STATEMENT

Weber was injured while looking at parts for pellet stoves at the Menards' store in Sidney, Ohio when a horizontal vent cap fell from a shelf, which resulted in a laceration on Weber's thumb. Weber points to no evidence, however, that Menards was negligent and should therefore be liable for his injury other than the fact that he was in the store at the time of his injury. Weber's claim fails because Menards did not owe him a duty since the falling merchandise was an open and obvious hazard. Further, even if Menards owed a duty to Weber, Menards did not breach the duty since there is no evidence to suggest that Menards created the hazard, had actual knowledge of the hazard, or that the hazard existed for sufficient time to put Menards on notice. Finally, Weber cannot rely on the doctrine of *res ipsa loquitur* to infer negligence since he has not set forth specific facts establishing that Menards—rather than another customer—created the alleged hazard. Thus, summary judgment is appropriate.

## II.    FACTUAL BACKGROUND

On the evening of September 22, 2012, Weber and his teenage son, Dakota, were at the Menards store in Sidney, Ohio to get price estimates on pellet stove parts. (Weber Dep. at pp. 9, 14). Weber had visited this particular store "[m]ultiple times." (Weber Dep. at p. 14). Weber was also familiar with the parts he was looking for; he had "helped people, friends, hook up the pellet stoves before." (Weber Dep. at p. 16). Weber was not looking for the piece—a horizontal vent cap—that fell from the shelf, but he "knew what they were and what they were used for." (Weber Dep. at p. 18).

There were a number of shelves in the aisle where Weber and his son were located. (Weber Dep. at p. 22). Each shelf was divided by wire, creating bins, and the pellet stove parts were placed loosely in these bins. (Weber Dep. pp. 22–23). Weber estimates that there were

2

four or five levels of shelves, with the highest shelf located at his eye level. (Weber Dep. p. 23). Prior to the item falling, Weber had picked up, looked at, and returned items to these shelves. (Weber Dep. pp. 25–26). Although Weber is not sure on which shelf the horizontal vent caps are supposed to be stored, the one that fell "came from the top" shelf, at Weber's eye level. (Weber Dep. p. 23).

There were *other customers* in Menards at the time of Weber's visit. (Weber Dep. at p. 20). Other customers were free to walk down the *same aisle* as the one in which Weber was injured, where there were several levels of shelves holding loose parts in bins with metal dividers. (Weber Dep. at pp. 20–22). The horizontal vent pipes, including the particular one that fell from the shelf, were *accessible by any customer in the store*. (Weber Dep. at p. 21). In fact, "some of the parts were mixed up" because the parts were loose, and there were "people throwing stuff back in [the shelving bins]." (Weber Dep. at p. 23). At the time, Weber was not being assisted by any Menards employees. (Weber Dep. at p. 16).

Weber was talking to his son in the aisle when he saw something in the corner of his right eye and "tried to block it with [his] right hand." (Weber Dep. at p. 28). He "[saw] something falling and [] just reached up with [his] right hand to [try] to block it because it looked like it was coming for either [his] face or [his] son." (Weber Dep. at p. 28). Weber claims that he does not know what caused the item to fall. (Weber Dep. at pp. 24–25). However, on the day of the incident, he told the store manager, Terry Fenton, that "he was reaching for or grabbing an item over by the stovepipe. Another item fell and he instinctively grabbed it." (Fenton Dep. at p. 17). The result was a laceration on Weber's thumb. (Weber Dep. at pp. 29–30). There is no evidence of any other customers who have been injured by the pellet stove materials at the Sidney store. (Fenton Dep. at pp. 19–20).

In short, the undisputed facts of this case, as established by Weber's own testimony, reveal that:

- The manner in which the part was stored was visible and apparent to Weber;

- The part that fell was not in Menards' exclusive control since other customers had access to it; and

- Weber had picked up and returned other parts to the shelves prior to the part at issue falling.

Thus, based on the undisputed facts of this case, Menards is entitled to summary judgment as a matter of law.

## III.    LAW AND ANALYSIS

### A.    Legal Standard

Summary judgment is proper "if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59 (1970). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). If a defendant points to evidence illustrating that the plaintiff will be unable to prove any element of negligence, he is entitled to judgment as a matter of law. *E.g., Lambert v. Sack 'N Save, Inc.,* 4th Dist. No. 12CA3319, 2012-Ohio-4686, ¶ 7.

4

**B.    Menards did not owe a duty to Weber to protect him from the open and obvious condition.**

In order to establish liability for negligence in Ohio, a plaintiff must show (1) the existence of a duty; (2) breach of that duty by the defendant; and (3) an injury (4) resulting proximately therefrom. *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). "A shopkeeper owes business invitees a duty of care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985). However, a shopkeeper is not an insurer of the customer's safety. *Id.* Further, the open and obvious doctrine eliminates a premises owner's duty to warn a business invitee of dangers either known to the invitee or so obvious and apparent to the invitee that he or she may reasonably be expected to discover them and protect against them. *Sidle v. Humphrey*, 233 N.E.2d 589, 591 (Ohio 1968); *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶¶ 13–14 (Ohio 2003) ("[T]he open-and-obvious doctrine remains viable in Ohio."). The doctrine's rationale is that the open and obvious nature of the hazard itself serves as a warning so that business owners may reasonably expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmer v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992).

The open and obvious doctrine obviates the duty to warn and acts as a *complete bar* to any negligence claims. *Armstrong*, 2003-Ohio-2573, ¶ 5. Open and obvious dangers are those that are not hidden, concealed from view, or undiscoverable upon ordinary inspection. *Lydic v. Lowe's Cos., Inc.*, 2002–Ohio-5001, ¶ 10 (10th Dist.). A person does not need to observe a dangerous condition for it to be an "open and obvious" condition under the law; rather, the determinative issue is whether the condition is <u>observable</u>. *Id.* The Ohio Supreme Court has

5

also held that a pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse. *Jeswald v. Hutt*, 239 N.E.2d 37, 39 (Ohio 1986).

Here, Weber has testified that the horizontal vent cap was not hidden; rather, it was observable. Of particular note, Weber admits the merchandise which injured him was at his eye level. (Weber Dep. at pp. 23–24). The only reason Weber did not see the horizontal vent cap, which he admits was at his eye level, before it fell off the shelf was because *he was not looking* at it as he talked to his son, which is no excuse under the law. (Weber Dep. at pp. 24–25).

Further, some Ohio courts have addressed the open and obvious doctrine in the falling merchandise context. In *Hupp v. Meijer Stores Ltd. P'ships*, a customer pulled a rug from a shelf, causing the shelf to shake, and was struck by another rug while she was putting the first one in her cart. 2006-Ohio-2051, ¶ 3 (5th Dist. 2006). The Fifth District found the danger inherent in removing the merchandise from the display shelf was open and obvious. *Id.* at ¶¶ 19–20. Likewise, in *McGee v. Lowe's Home Ctr.*, a customer was lifting vinyl flooring off a display when the rest of the display started to fall and landed on her foot. 2007-Ohio-4981, ¶ 3 (7th Dist. 2007). The Seventh District found that the arrangement of the pre-cut vinyl sheet flooring placed on display was an open and obvious condition and that "[a]ny reasonable shopper should have appreciated the risk associated with removing merchandise from the display given the nature of its location and the arrangement of the pre-cut vinyl sheet flooring." *Id.* at ¶ 16. The court further noted that "[g]ranted, no shopper particularly expects or desires to have a display come tumbling down on them" but in a "self-help environment, **there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions.**" *Id.* at ¶ 17 (emphasis added).

6

Like the plaintiffs in those cases, Weber had been looking at and removing items from the shelves prior to the item falling. (Weber Dep. at p. 26). Although he had not touched the horizontal vent cap prior to it falling, he had picked up and looked at other parts and placed them back in the bins. (Weber Dep. at pp. 25–26). Further, he told Fenton that "he was reaching for or grabbing an item over by the stovepipe. Another item fell and he instinctively grabbed it." (Fenton Dep. at p. 17). Although he may not have expected a loose part to fall, as the court in *McGee* noted, there is always a possibility that too much fumbling through merchandise can create an unstable situation where items may become loose, particularly in a self-help environment like the one described by Weber. 2007-Ohio-4981, ¶ 17. Because the merchandise was an open and obvious hazard on the shelf, in plain view and at Weber's eye level, and Weber had removed and returned merchandise to the shelves, Menards did not owe a duty to Weber. Thus, Menards is entitled to summary judgment as a matter of law.

C.      **Even if Menards owed a duty to Weber, Weber has failed to show that Menards breached its duty since he cannot identify a hazardous condition which caused his injury.**

A merchant is not the insurer of an invitee's safety against all accidents and injuries while the invitee is in the store. *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 927 (Ohio 1943). Even if Menards owed a duty to Weber, in order to show that Menards breached its duty, Weber must prove that: (1) Menards created the hazard; (2) Menards had actual knowledge of the hazard and failed to either warn of it or eliminate it; or (3) the hazard existed for a sufficient length of time to put Menards on notice. *Id.* at 928. In the absence of evidence showing Menards created, knew of, or should have known of the hazard, Menards is entitled to summary judgment. *See id.*

7

Although a premises owner *could be* liable for injuries caused by merchandise displays if it is reasonably foreseeable that another customer would dislodge the display and the display was unstable and dangerous, the plaintiff must put forward evidence establishing that the premises owner created, knew of, or should have known of unstable and dangerous displays. *Hansen v. Wal-Mart Stores, Inc.*, 2008-Ohio-2477, ¶¶ 12, 16 (4th Dist.). Because the presumption is that both parties exercised ordinary care, the plaintiff must point to facts in the record rather than simply rely on speculation or conjecture. *Id.* at ¶¶ 14–16. When a plaintiff can offer "no evidence of [a store's] negligence beyond speculation and the fact that the injury occurred, [the plaintiff's] argument that [the store] had superior knowledge of the dangerous condition because it created the display is [] meritless." *Lacy v. Wal-Mart Stores, Inc.*, 2012-Ohio-1690, ¶ 37 (7th Dist.) (emphasis added).

In *Lacy*, the court held that a plaintiff must actually know what dangerous condition caused his injury. 2012-Ohio-1690, ¶ 37 (7th Dist.). The plaintiff claimed that he was bent down, looking at a printer, when he heard a sound like something breaking loose. *Id.* at ¶ 4. When he looked up, he saw a monitor falling, which hit him in the head; the plaintiff confirmed that "all he knew was that he heard a sound, he looked up, and the monitor came down." *Id.* Significantly, the plaintiff could not identify what caused the merchandise to fall. *Id.* at ¶ 5. Because the plaintiff could not identify what caused the merchandise to fall onto and injure him, and therefore could not show the merchant was negligent, the court granted summary judgment to the store. *Id.* at ¶¶ 36–37.

Like the plaintiff in *Lacy*, Weber cannot identify what caused the horizontal vent cap to fall onto him, since he claims he saw the piece falling out of the corner of his eye and instinctively reached up to try to block the horizontal vent cap as it fell. (Weber Dep. at pp. 28–

8

29). He did not even "get a chance to look at what was coming before it hit [him]." (Weber Dep. p. 28). Weber's son, the only other person in the aisle with Weber at the time, did not see the item fall of the shelf. (Weber Dep. at p. 61). Thus, Weber relies solely on speculation and conjecture; but the mere fact that he was inside Menards at the time of his injury does not mean Menards created or knew of the hazard which harmed him.

The best evidence of how the horizontal vent cap fell is a blurry security video. (Fenton Dep. at p. 15). Unfortunately for Weber, the only thing discernable from the video is Weber "reaching for an item." (Fenton Dep. at p. 16). However, the blurry security video, when coupled with Weber's statement the day of the incident that he was, in fact, reaching for an item when the end pipe fell, indicates that the only person who knew of or created the hazard in Menards that day was Weber himself. (Fenton Dep. at p. 17). Because Weber cannot identify the hazard, and there is no evidence that Menards created, knew of, or should have known of a hazard, summary judgment should be granted.

**D.** **The doctrine of *res ipsa loquitur* is unavailable to Weber because Menards did not have exclusive control of the item which caused the injury.**

Finally, Weber cannot rely on *res ipsa loquitur* to show Menards negligently created the condition. *Res ipsa loquitur* permits an inference of negligence when: (1) the instrumentality causing the injury was under the exclusive control of the defendant, and (2) the accident occurred under circumstances that would not have occurred absent negligence. *Hake v. George Wiedemann Brewing Co.*, 262 N.E.2d 703, 705 (Ohio 1970). However, a retail owner cannot be considered to have exclusive control of an item when the public also has access to it. *Hansen*, 2008-Ohio-2477, ¶ 22; *Occhipinti v. Bed Bath & Beyond*, 2011-Ohio-2588, ¶ 29 (11th Dist.). Because Weber's injury occurred in a retail establishment open to the public, he cannot show Menards had exclusive control over the cap and, therefore, the doctrine does not apply.

In *Kemper v. Builder's Square, Inc.*, the court held that a public store did not have exclusive control over posts in a self-service shelving unit unless there was evidence showing "no other customers or third parties could have had control over or rearranged the posts from the time the posts left control of [the defendant] until [the plaintiff] was injured." 671 N.E.2d 1104, 1111 (2d Dist. 1996). This was despite the fact that it was undisputed that the failure to use restraints on the merchandise was the cause of the incident. *Id.* at 1107. Similarly, "public access to the instrument of the injury precludes a finding of exclusive control on the part of the [defendant]." *McConnell v. Budget Inns of Am.*, 718 N.E.2d 948, 957 (8th Dist. 1998).

Just as in *Kemper* and *McConnell*, the general public, including Weber, had access to the merchandise which caused Weber's injury. Weber did not see what caused the vent cap to fall from the top shelf. (Weber Dep. at pp. 24–25). However, there were other customers in the store, and these customers, like Weber, had access to the shelves:

> Q: While you were at the store, I assume **there were other customers at the store** . . ., correct?
> A: **Yes.** Yes.
> Q: Okay. And the other customers would have been **free to walk down the same aisle** as you, correct?
> A: **Yes.**
> Q: Okay. And this–the particular horizontal vent pipes and even the particular one at issue with your incident, they were **accessible by any customer**, correct?
> A: **Yes.**
> Q: Okay. So whether it was your or another customer walking down the aisle, **they could have picked up and grabbed that horizontal vent pipe off the shelf**, correct?
> A: **Yes.**
> Q: And same thing, if they picked it up, **they could have put it back on the shelf**, correct?
> A: **Yes.**

(Weber Dep. at pp. 20–21). In fact, "some of the parts were mixed up" because the parts were loose, and there were "people throwing stuff back in [the shelving bins]." (Weber Dep. at p. 23).

Finally, at the time the merchandise fell, Weber was not being assisted by any Menards employee. (Weber Dep. at p. 16).

In order to establish negligence, Weber must rely on the doctrine of *res ipsa loquitur*. However, the doctrine cannot be used to infer negligence in this case because Menards did not have exclusive control of the publicly-accessible item which caused Weber's injury. Thus, Menards is entitled to summary judgment.

## IV. CONCLUSION

Menards cannot be liable simply because Weber was injured while shopping in its store. Weber's claim must fail because Menards did not owe him a duty since the falling merchandise was an open and obvious hazard. Further, even if Menards owed a duty to Weber, Menards did not breach its duty since it did not create the hazard, did not have actual knowledge of the hazard, and the hazard did not exist for sufficient time to put Menards on notice. Finally, Weber cannot rely on the doctrine of *res ipsa loquitur* to infer negligence since Menards did not have exclusive control over the item which caused his injury. Accordingly, this Court should grant Menards' Motion for Summary Judgment.

Respectfully submitted,

Patrick Kasson, Esq. (0055570)
Reminger Co., L.P.A.
Capitol Square Building, 4TH Floor
65 E. State Street
Columbus, Ohio 43215
Phone: (614) 232-2418
Fax:    (614) 232-2410
pkasson@reminger.com
*Counsel for Defendant, Menard, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served upon all counsel via this Court's ECF System, this 21 day of July, 2014.

Patrick Kasson, Esq. (0055570)