IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK K. WEBER, II,  :

    Plaintiff,

v.  :  Case No. 3:13-cv-229

MENARD, INC., *et al.*,  JUDGE WALTER H. RICE

    Defendants.  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT MENARD, INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. #18)

---

Plaintiff Mark K. Weber, II ("Weber"), filed this negligence action against Menard, Inc. ("Menards"), after being injured by falling merchandise while shopping at a Menards store.[1] This matter is currently before the Court on Defendant Menard, Inc.'s Motion for Summary Judgment. Doc. #18.

I. **Background and Procedural History**

On September 22, 2012, Mark Weber went with his son to a Menards store in Sidney, Ohio, to check prices on parts he needed to hook up a pellet stove. Doc. #14, PageID#88. According to Weber, the stovepipe area of the store was

---

[1] Weber has voluntarily dismissed subrogation claims against MedCost Benefit Services, LLC, and Union Corrugated.

"very disorganized." Unpackaged stovepipe parts of various sizes and shapes were loosely stacked on top of each other in wire bins on the shelves. Some of the parts were stacked higher than the guard walls of the wire bins. *Id.* at PageID##98-99.

Weber pulled a piece of piping off a lower shelf, looked at it, and replaced it on the same shelf. As he was standing in the aisle talking to his son, a horizontal vent cap fell off the top shelf. *Id.* at PageID##89-91. As he reached up to block it, the vent cap lacerated his right hand. He needed surgery to repair severed nerves, followed by weeks of physical therapy. *Id.* at PageID##91-94. Weber, a truck driver, was off work for five or six weeks. Because of continued numbness and limited mobility in his right thumb, he now has to use his left hand to do a lot of things. *Id.* at PageID##95-96.

Weber filed suit against Menards in state court, alleging one count of negligence. Menards removed the case to federal court on the basis of diversity jurisdiction, and has now moved for summary judgment.[2] Doc. #18.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[2] The Court is convinced that removal was proper. There is complete diversity of citizenship, and the Court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a), and 28 U.S.C. § 1446(c)(2).

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3

matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Analysis

The parties agree that Ohio law governs Weber's negligence claim. To succeed on this claim, Weber must prove: (1) the existence of a duty; (2) a breach of that duty; and (3) injury resulting proximately from the breach. *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). Menards argues that summary

judgment is warranted because Weber cannot establish the first two elements. Menards also argues that Weber cannot rely on the doctrine of *res ipsa loquitur* to establish negligence. The Court turns to that argument first.

### A.  *Res Ipsa Loquitur*

"The doctrine of *res ipsa loquitur* allows a plaintiff to prevail in a negligence case by showing that, even if there is no direct evidence of negligence, the circumstances of the accident indicate that it probably would not have occurred had the defendant not been negligent." *Kruzer v. Cleveland*, No. 97168, 2012 WL 986471, at *3 (Ohio Ct. App. Mar. 22, 2012) (citing *Jennings Buick, Inc. v. Cincinnati*, 406 N.E.2d 1385, 1388 (Ohio 1980)). If applicable, the doctrine permits the jury to infer negligence, rendering summary judgment inappropriate. *Id.*

> A plaintiff seeking to invoke the doctrine of *res ipsa loquitur* must prove:
>
> (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.

*Hake v. George Wiedemann Brewing Co.*, 262 N.E.2d 703, 705 (Ohio 1970).

Menards contends that the doctrine of *res ipsa loquitur* is inapplicable because Menards did not have exclusive control over the vent cap when it fell and injured Weber. The Court agrees. In *McConnell v. Budget Inns of America*, 718 N.E.2d 948, 957 (Ohio Ct. App. 1998), the court held that public access to the

5

object that caused the injury precludes a finding of exclusive control on the part of the store. *See also Hansen v. Wal-Mart Stores, Inc.*, No. 07CA2990, 2008 WL 2152000, at *8 (Ohio Ct. App. May 20, 2008) ("Ohio courts generally hold that a premises occupier will not be deemed to have exclusive control over an object where the public has access to it"); *Kemper v. Builder's Square, Inc.*, 671 N.E.2d 1104, 1111 (Ohio Ct. App. 1996) (holding that, absent evidence that no other customers could have rearranged the display before the plaintiff was injured, the store could not be found to have exclusive control over it).

As Weber himself testified, the stovepipe merchandise was accessible to all customers in the store. Anyone could have removed the horizontal vent cap from the wire bin, and then replaced it in a careless manner. Doc. #14, PageID#89. Because other customers could have created the hazardous condition that caused Weber's injury, Weber cannot establish the requisite exclusive control.

*Fields v. Federated Department Stores, Inc.*, No. 92AP-1628, 1993 WL 303617 (Ohio Ct. App. July 29, 1993), cited by Weber, is inapposite. In *Fields*, the plaintiff was injured when a large mirror came unglued and fell from a pillar in the department store. She testified that she did not brush up against it, and did not know what caused it to fall. The appellate court found that, because the doctrine of *res ipsa loquitur* applied, the trial court erred in granting summary judgment in favor of the store. It concluded that, absent any evidence from which it could be inferred that another customer knocked the mirror off the pillar, the trial

6

court should have found that the store had exclusive control of the mirror. *Id.* at *4.

Weber argues that, as with the mirror, there is no evidence that he or anyone else did anything to cause the horizontal vent cap to fall from the display. He therefore argues that the only logical inference is that the dangerous condition was created by Menards' negligent manner of displaying the stovepipe parts.

This case, however, is factually distinguishable from *Fields*. The horizontal vent cap was merchandise that was available for purchase. In the self-help environment of Menards, it was expected that customers would pick it up from the display, handle it, and, if they chose not to purchase it, would return it to the shelf. In contrast, the mirror at issue in *Fields* was not for sale; rather, it was a fixture, attached to a pillar in the store. Customers would not typically be handling the mirror or doing anything that would cause it to fall. Negligent installation of the mirror was, therefore, the most likely cause of the plaintiff's injury.

In Weber's case, although the hazardous condition at issue may have been created by the manner in which Menards displayed the stovepipe parts, it is also possible that it was created by a customer who carelessly replaced the horizontal vent cap in the bin. Under the circumstances presented here, it cannot be said that the vent cap was in the exclusive control of Menards.

For this reason, the Court concludes that the doctrine of *res ipsa loquitur* does not apply. It therefore sustains this portion of Menards' motion for summary

judgment. Accordingly, Weber must now present direct evidence that Menards was negligent in its creation or maintenance of the stovepipe display.

### B.     Duty:  Open and Obvious Danger

A shopkeeper owes its customers "a duty of ordinary care in maintaining the premises in a reasonably safe condition" and in warning them of "latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1089 (Ohio 2003) (citing *Paschal v. Rite Aid Pharm., Inc.*, 480 N.E.2d 474, 475 (Ohio 1985)). However, a shopkeeper has no duty to protect its customers from dangers that are "so obvious and apparent" that the customer "may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 233 N.E.2d 589, syl. ¶1 (Ohio 1968).

"[T]he crucial inquiry is whether a customer exercising ordinary care under the circumstances would have seen and been able to guard himself . . . against the condition." *Hissong v. Miller*, 927 N.E.2d 1161, 1166 (Ohio Ct. App. 2010). The relevant question is whether the condition was observable, not whether the plaintiff actually observed it. *Id.* If the "open and obvious" doctrine applies, it acts as a complete bar to a claim of negligence. *Armstrong*, 788 N.E.2d at 1090. Menards argues that because the condition at issue here, *i.e.*, the loosely-stacked stovepipe parts, was an open and obvious danger, it owed Weber no duty.

Although the question of whether a duty to warn exists is one for the court to decide, the question of whether a particular danger is open and obvious is often very fact-specific, and genuine issues of material fact may preclude summary

8

judgment on this issue. *Hissong*, 927 N.E.2d at 1167. "[W]here reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Klauss v. Marc Glassman, Inc.*, No. 84799, 2005 WL 678984, at *3 (Ohio Ct. App. Mar. 24, 2005). Weber maintains that this is one of those cases.

As the cases cited by the parties illustrate, there appears to be no general consensus among Ohio courts on the question of whether falling merchandise is an open and obvious danger. In *Hupp v. Meijer Stores Limited Partnerships*, No. 05CE070047, 2006 WL 1085667 (Ohio Ct. App. April 25, 2006), a woman removed a rug from a store shelf. As she bent over to place it on the bottom of her shopping cart, another rug from an adjacent shelf fell and struck her in the neck. Even though the rug that fell was not in physical contact with the rug that the plaintiff had selected, the court found that "a reasonable person would have appreciated the danger inherent in removing merchandise from the display shelf." The court concluded that because this was an open and obvious danger, the store owed the plaintiff no duty to warn. *Id.* at *3.

In *McGee v. Lowe's Home Centers*, No. 06JE26, 2007 WL 2758668 (Ohio Ct. App. Sept. 21, 2007), the plaintiff was rummaging through a display of rolls of pre-cut vinyl sheet flooring. The rolls, of varying lengths, were placed vertically on a shelf and held in place by a bar. When the plaintiff attempted to lift one of the rolls off the display, other rolls fell from the display fell and injured her. The court

9

found that the precarious arrangement of the merchandise was an open and obvious danger. *Id.* at *4.

In other cases, however, Ohio courts have held that precariously-stacked merchandise is not necessarily an open and obvious danger. In *Lopez v. Home Depot, USA, Inc.*, No. L-02-1248, 2003 WL 1962360 (Ohio Ct. App. April 25, 2003), a man was looking at lumber stacked on a store shelf, when loose pieces of lumber piled on a higher shelf fell eight or nine feet, injuring his wife. The court found genuine issues of material fact with respect to whether the store had breached its duty, particularly since store policy dictated that the wood that fell should have been banded together. The court also found "that the potential hazard of having lumber fall from an upper shelf while someone is searching for wood in a lower shelf is not an open and obvious danger." *Id.* at *2.

In *Dillon-Garcia v. Marc Glassman, Inc.*, No. 86318, 2006 WL 302349 (Ohio Ct. App. Feb. 9, 2006), the plaintiff was attempting to remove a can of spaghetti sauce from a store display. As she did so, another can fell from a different part of the stack, striking her in the face. Rather than conclude that "the danger of a stray can falling was open and obvious as a matter of law," the court found that this was a question of fact for a jury. *Id.* at *3. *See also Rengel v. Meijer Stores Ltd. P'ship*, No. E-12-050, 2013 WL 1190867, at *4 (Ohio Ct. App. Mar. 22, 2013) (holding that there was a question of fact as to whether a store's display of cantaloupes created an open and obvious hazard).

10

Summary judgment is inappropriate in Weber's case, particularly because there is conflicting testimony about what happened immediately before the horizontal vent cap fell. The Court cannot resolve credibility issues on summary judgment. Weber testified that he removed a different stovepipe part from a lower shelf, looked at it, and replaced it on that same shelf. He denies that he removed anything from the shelf where the horizontal vent caps were displayed, or that anyone else did anything to disturb them. He claims that he was simply standing in the aisle, talking to his son, when the horizontal vent cap fell toward him. Doc. #14, PageID##89-91. But Terry Fenton, the store manager on duty that evening, testified that Weber told him that "he was looking at the different horizontal and vertical caps, and when he pulled one down, another one fell behind it and he instinctively grabbed it." Doc. #16, PageID##137-38.

The Court finds that a jury will have to resolve this factual dispute before it can be determined whether the danger of the precariously-stacked stovepipe parts can be deemed open and obvious. If Weber was, in fact, rummaging around in the horizontal vent cap bin when the part fell, it is more likely that the danger will be deemed open and obvious. But if he did not touch anything in that particular bin, this becomes a much closer question. Even if the parts were precariously stacked, one would not necessarily expect one of them to fall unless someone did something to dislodge it.

### C. Breach

Menards also argues, even if it owed Weber a duty of ordinary care in maintaining the premises in a reasonably safe condition, Weber cannot establish a breach of that duty. In order to establish a breach, Weber must show:

> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
> 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943).

Menards first argues that summary judgment is warranted because Weber has not identified exactly what caused the horizontal vent cap to fall from the bin. In support of this argument, Menards relies primarily on *Lacy v. Wal-Mart Stores, Inc.*, No. 11BE32, 2012 WL 1307075 (Ohio Ct. App. Mar. 27, 2012). In *Lacy*, the plaintiff was injured when a display shelf broke, causing a monitor to fall and strike him in the head and neck. No one was touching the shelf when it broke. The trial court granted summary judgment in favor of the store, and the appellate court affirmed the decision. Because plaintiff had failed to present any evidence of what caused the shelf to break, there was no genuine issue of material fact concerning the existence of an unreasonably safe condition. The court held that the plaintiff could not rely on mere speculation and the fact that he was injured. *Id.* at *6-7.

12

Notably, the *Lacy* court distinguished that case from other cases in which plaintiffs did specifically identify the proximate cause of their injuries. *See Kemper*, 671 N.E.2d at 1109 (identifying the hazardous condition as the vertical stacking of heavy wooden posts on a display case, without a restraining device to reduce the likelihood that they would fall); *Carr v. May Dep't Stores Co.*, No. 77290, 2000 WL 1369902, at *3 (Ohio Ct. App. Sept. 21, 2000) (identifying the hazardous condition as the failure to lock a turnkey to properly secure a mannequin on a display). Weber's case is similar to *Kemper* and *Carr* in that he has, in fact, specifically identified the hazardous condition that caused his injury – the negligent stacking of the stovepipe parts higher than the guard walls on the wire bins.

The next question is whether Weber has presented sufficient evidence to establish a genuine issue of material fact concerning Menards' alleged breach of duty. The existence of a breach is typically a question of fact to be determined by the jury. *Pacher v. Invisible Fence of Dayton*, 798 N.E.2d 1121, 1128 (Ohio Ct. App. 2003). Nevertheless, Menards argues that summary judgment is warranted in this case because there is no evidence to suggest that Menards created the hazard, or had actual or constructive knowledge of the allegedly unstable display. The Court disagrees.

Weber testified that he had been in this same aisle in this particular Menards store on numerous occasions to look at stovepipe parts. He further testified that every time he visited the store, the loose stovepipe parts were protruding above the guard walls on the wire bins. Doc. #14, PageID#99. A reasonable jury could

13

infer from Weber's testimony that this was the normal manner in which Menards chose to display the stovepipe parts. Store manager Terry Fenton conceded in his deposition that some of the stovepipe parts have sharp edges, and that some of the larger parts could have been stacked above the level of the guard walls. Doc. #16, PageID##135, 143.

In *Hansen*, 2008 WL 2152000, the court held that a business owner owes a duty of reasonable care to display its goods in a safe manner. If it is reasonably foreseeable that another customer will dislodge the goods, making the display unstable and dangerous, the store may be found to have breached that duty. *Id.* at *5-6. *See also McCormack v. Pick-N-Pay Super Markets, Inc.*, 170 N.E.2d 491, 493-94 (Ohio Ct. App. 1960) (finding a genuine issue of material fact concerning whether the storeowner breached a duty to the plaintiff, where the merchandise was improperly stacked, making it reasonably foreseeable that customers handling the goods would make the display unstable); *Lopez*, 2003 WL 1962360, at *2 (finding a genuine issue of material fact concerning whether Home Depot breached its duty to plaintiff by allowing loose lumber to remain on a high, open shelf).

Here, based on Weber's testimony that the stovepipe parts were stacked in the same precarious manner each and every time he visited the store, a reasonable jury could find that Menards created a hazardous situation by stacking the unpackaged stovepipe parts too high, breaching its duty to maintain its premises in a reasonably safe condition so that its customers were not unnecessarily and

unreasonably exposed to danger. For this reason, Menards is not entitled to summary judgment on Weber's negligence claim.

## IV. Conclusion

The Court SUSTAINS IN PART and OVERRULES IN PART Defendant Menard, Inc.'s Motion for Summary Judgment, Doc. #18. The doctrine of *res ipsa loquitur* is inapplicable in this case. Nevertheless, genuine issues of material fact preclude summary judgment on the question of whether the danger at issue was open and obvious, and on the question of whether Menards breached a duty to maintain its premises in a reasonably safe condition.

Date: October 3, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE